IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. BUBICK,<br><br>          Plaintiff,<br><br>     vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>          Defendant.<br>_____/ | CASE NO. CV F 05-1445 LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 16) |

Plaintiff William J. Bubick ("claimant") seeks judicial review of an administrative decision denying his claim for Supplemental Security Income under the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an April 7, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed his complaint on October 24, 2005 and his opening brief on August 17, 2006. The Commissioner filed her opposition to the appeal on September 15, 2006. Claimant filed a reply brief on November 2, 2006.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Supplemental Security Income under the Social Security Act on December 26, 2000. (Administrative Record "AR" 48-50.) He alleges a disability onset of September

1

1, 1995 due to congestive heart failure. (AR 53.) Claimant's application for benefits was denied and denied upon reconsideration. (AR 28-36.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on July 16, 2003. (AR 147-151.) The Appeals Council remanded the matter on April 23, 2004. (AR 151-155.) At a new administrative hearing, the ALJ issued an unfavorable opinion on January 28, 2005. (AR 18-24.) The Appeals Council denied review. (AR 12.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Background and Work Experience

Claimant was born on March 1, 1961. (AR 288.) Claimant's education includes some college and an associates degree in hotel management. (AR 288.) Claimant's past relevant work was referring persons for mortgages. (AR 332-333.)

### Medical History

The pertinent medical history is summarized as follows.

Claimant was treated at San Mateo County General Hospital from February 2000 to May 2001 and in 2002 and 2003. On February 29, 2000, claimant reported to the San Mateo County Health Center with several months of increasing shortness of breath, dyspnea on exertion, orthopena and edema. (AR 96.) He was assessed by Mark Highman, M.D. with congestive heart failure, hypertension, gastroesophageal reflux disease. (AR 97.)

On March 2, 2000, Dr. Highman referred claimant to Steve Hassid, M.D., who performed an echo-doppler study to evaluate claimant's left ventricular function. (AR 99-101.) Dr. Hassid noted that claimant's left ventricle was severely dilated and markedly hypokinetic with an ejection fraction of no more than 20 percent; biatrial enlargement; trace aortic insufficiency; mildly myxomatous-appearing mitral valve with severe mitral regurgitation; trace pulmonic insufficiency; moderate to severe tricuspid regurgitation; and an unexplained density in the anterolateral wall. (AR 100.)

At discharge on March 3, 2000, Dr. Highman diagnosed congestive heart failure, cardiomyopathy and gastroesophageal reflux disease. (AR 92.) In a treatment note on March 8, 2000, claimant reported he is taking his medications and feels tired.

A treatment note on May 17, 2000 followup visit with Jeffrey Guttas, M.D., claimant stated that he had no discomfort. (AR 90.)

1    A treatment note from October 18, 2000 reports a follow up visit, in which claimant denied chest
2 pain, palpitation, or shortness of breath. (AR 88.) His medications were not changed.
3    On February 21, 2001, claimant saw Dr. Gutta at San Mateo County General Hospital for cardiac
4 assessment. (AR 82.) Plaintiff reported no pain. (AR 82.) Dr. Gutta reported that claimant needed an
5 echocardiogram for a 1 year follow up. (AR 82.) A May 23, 2001 treatment note reported claimant
6 stated he was doing well and had no pain. (AR 85.) He had "endurance - 18 holes." (AR 85.) An
7 echocardiography report on May 14, 2001 showed claimant had a moderate left ventricular enlargement
8 and bi-atrial enlargement; left ventricular systolic function lower limits of normal, possible diastolic with
9 M2 less than M2 and other mild findings. (AR 86.) The report concluded that "since a previous
10 echocardiographic study March 2000, there has been dramatic improvement." (AR 86.)
11    Claimant cancelled or failed to show for a January 17, 2001 and a March 21, 2001 follow up
12 appointments. (AR 191, 192.)
13    On May 31, 2001, a State Agency physician reviewed claimant's medical records and opined that
14 claimant could lift ten pounds occasionally; could lift less than ten pounds frequently; could stand and/or
15 walk at least two hours; could sit about six hours; and could occasionally climb, balance, stoop, kneel,
16 crouch, and crawl. (AR 109-117.)
17    During a May 8, 2002 followup visit, Dr. Guttas noted that claimant denied chest pain, shortness
18 of breath, or any new problems. (AR 187.) Claimant cancelled an August 22, 2001 follow up
19 appointments. (AR 190.)
20    In a treatment report by Dr. Highman on November 22, 2002, he reported that claimant "is
21 actually doing pretty well" except for stress, and did "not have a lot of symptoms or problems." (AR
22 185.)
23    A follow up visit with Dr. Highman on May 23, 2003 reports that claimant stated he has no chest
24 pains and is feeling well. (AR 180.) Also on May 23, 2003, claimant was seen by nurse practitioner
25 Maria Gonzalez. (AR 181-182.) He reported he did not have shortness of breath, cough, and that he
26 continues to smoke and drink. (AR 181.)

27                              **Hearing Testimony**

28    At the initial administrative hearing, claimant testified that he lives with his mother who is

1 terminal with cancer. He helps around the house. He smokes a couple of cigarettes a day to relieve the
2 stress and also a couple of glasses of wine. (AR 291.) Claimant has a driver's license. (AR 292.) He
3 does all the grocery shopping and drives daily. (AR 292.) He was helping a friend with a fish business.
4 He lifted 25 pounds and last worked for it in 2000. (AR 295.) His congestive heart failure has him in
5 the hospital and causes him fatigue. (AR 296.) He did not have surgery scheduled. (AR 296.) When
6 he stands, his legs swell. (AR 297.) He's been advised to keep them elevated. (AR 302.) He can sit
7 for a couple of hours. (AR 297.) He does household chores, takes his mom on errands, and goes with
8 her to the casino. (AR 298.) He has been told he will need a heart transplant. (AR 304.)

9   At the second administrative hearing following the Appeals Council's order of remand, claimant
10 testified that he is more tired and cannot walk far because he is losing feeling in his feet. (AR 313.) He
11 said his medical bills are piling up so he has not been to the doctor. (AR 313.) He gets his medicine
12 from out of the country. (Ar 313.) He was last hospitalized in March 2000 for heart problems. (AR
13 315.) He gets shortness of breath on exertion and fatigue. (AR 316.) He sleeps about 7 hours a night
14 and the rest of a 24 hour time frame he is awake and sits with his feet elevated. (AR 317.) His feet get
15 numb. (AR 318.)

16   A medical expert, Steven Laviola, M.D. testified. (AR 320.) Dr. Laviola is board certified in
17 internal medicine and cardiovascular diseases. (AR 321.) Dr. Laviola testified that claimant has
18 congestive heart failure, which might meet the Listing of Impairments 4.02 from March 2000 to October
19 2000. (AR 323.) After October 2000, Dr. Laviola opined that claimant could perform a desk
20 job/sedentary work, lift 20 to 50 pounds occasionally, walk 4 hours out of eight with no limitation on
21 sitting. (AR 324.) He testified that the best form of treatment for claimant was medication because
22 claimant was asymptomatic. (AR 329.) Dr. Laviola stated he had medical records through October
23 2001. (AR 329.)

24   Vocational expert ("VE") Susan Moranda testified. (AR 331.) She testified that claimant's past
25 relevant work as a mortgage clerk was sedentary work, as best she could match it. (Ar 336.) In the first
26 hypothetical, the claimant would be limited to sitting six hours, standing and/or walking four hours and
27 lifting carrying 20 pounds frequently and 50 pounds occasionally. (AR 337.) The VE testified that
28 claimant could perform his past relevant work. (AR 337.) The VE testified that the hypothetical

claimant could also perform a job as a small parts assembler, cashier II. (AR 338.) She testified that a portion of the number of jobs for the small parts assembler could be performed while claimant had his feet elevated. (AR 339.)

## **ALJ Findings**

In his January 28, 2005 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 18.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 23-24):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's congestive heart failure is a "severe" impairment, based upon the requirements in the Regulations. 20 CFR §416.920.

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, subpart P, Regulation No.4.

4. The ALJ finds that the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant retains the residual functional capacity to perform a wide range of light to medium work. He can lift/carry 50 pounds occasionally and 20 pounds frequently. He can stand/walk for 4 hours in an 8 hour workday. He can sit for 6 hours in an 8 hour workday.

6. The claimant's past relevant work as mortgage broker did not require the performance of work-related activities precluded by his residual functional capacity. (20 CFR §416.965.)

7. The claimant's medically determinable congestive heart failure does not prevent the claimant from performing his past relevant work.

8. The claimant is a "younger individual between the ages of 18 and 44." (20 CFR §416.963.)

9. The claimant has "more than a high school (or high school equivalent) education." (20 CFR §416.964.)

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. (20 CFR §416.968.)

11. In the alternative, the claimant has the residual functional capacity to perform a significant range of light work. (20 CFR §416.967.)

12. In the alternative, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a small parts assembler, with 97,000 jobs, and as a cashier II, with 85,000 jobs.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (20 CFR §416.920(f)).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) failing to provide "clear and convincing" reasons for rejecting the opinion of Jeffrey Guttas, M.D., claimant's treating physician, (2) relying on the opinion of Dr. LaViola, the non-examining medical expert who testified at claimant's hearing, as he was not provided with copies of key medical records; (3) failing to adopt the State agency medical consultant's opinion, and (4) failing to properly evaluate claimant's subjective complaints.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985).

7

prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that he met the criteria in step one of the sequential analysis; that he has not been engaged in substantial gainful employment.

At step two and three , the ALJ must determine if the impairment is severe. The ALJ determined that claimant had a severe impairment of congestive heart failure, but that it did not meet the requirements in the Listings of Impairments. (AR 23, Finding no. 3.)

**The ALJ's Finding of Residual Functional Capacity**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light,

---

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

8

1  medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.

2      In this case, the ALJ found that plaintiff had the residual functional capacity for medium to light

3  work.  Under the applicable regulations, "medium work" is defined as follows:

> Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."

20 CFR §§404.1567(c) and 416.967(c). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).  Social Security Ruling 83-10 further defines this term by stating that " . . . the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Ruling 83-10 further explains that "[s]itting may occur intermittently during the remaining time."

    Here, the ALJ found that claimant has the residual functional capacity to perform a wide range of light to medium work.  He can lift/carry 50 pounds occasionally and 20 pounds frequently.  He can stand/walk for 4 hours in an 8 hour workday and six for 6 hours out of eight.  (AR 24, Finding no. 5.)

    Claimant argues the ALJ erred in finding any residual functional capacity because his treating physician Dr. Gutta opined claimant cannot perform any work.

    Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Ninth Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d).  However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted.  20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n.

7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR .) The ALJ reviewed all of the objective medical evidence in the record, including the records from claimant's March 2000 hospitalization, the treatment notes from Dr. Highman, Dr. Gutta's treatment notes and subsequent echocardiograms and treatment notes. (AR20-21.)

Claimant argues that in March 8, 2001, Dr. Gutta assessed him that he could lift/carry less than 10 pounds, stand/walk less than 2 hours and sit for less than 6 in an eight hour work day.

The ALJ gave this opinion "less weight" because it was "inconsistent with the medical evidence." Just prior to Dr. Gutta's opinion, claimant saw Dr. Gutta on February 21, 2001 for cardiac assessment and claimant reported no pain. (AR 82.) A May 23, 2001 treatment note reported claimant stated he was doing well and had no pain and the report indicates that claimant played "18 holes." (AR 85.) By May 2001, echocardiogram results revealed that Appellant's left ventricular systolic function was "surprisingly good" and that his ejection fraction showed a "dramatic improvement." (AR 21, 86-87.) The ALJ referred to Dr. Highman's November 2002 note that claimant was doing pretty well and did not have a lot of symptoms. (AR 21, 185.)

The ALJ also noted that by October 2000, the year claimant was hospitalized, claimant's health had significantly improved. (AR 21.) A treatment note from October 18, 2000 reports in a follow up visit with Dr. Gutta, claimant denied chest pain, palpitation, or shortness of breath. (AR 88.) On May 23, 2003 claimant reported that he had no chest pains, is feeling well, did not have shortness of breath,

10

1  or cough, and continues to smoke and drink.  (AR 180, 181-182.)

2  The ALJ exhaustively reviewed the medical evidence and noted each reference where claimant's
3  condition was recorded and improvement noted. (AR 20-21.) In addition, the ALJ noted that Dr. Laviola
4  put a time frame on the severity of the condition - March 200 through October 2000. (AR 11.) Thus, the
5  ALJ gave a detailed summary of the facts and compared the conflicting clinical evidence with that of
6  Dr. Gutta's statement. (AR 16-17.) The ALJ stated convincing reasons for rejecting the statement from
7  Dr. Gutta. A treating physician's opinion is granted controlling weight only if it is well supported by
8  medically acceptable clinical and laboratory diagnostic technique and not inconsistent with the other
9  substantial evidence in the record. 20 CFR 416.927(d)(2).  *See Matney v. Sullivan*, 981 F.2d 1016, 1019
10 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of
11 disability sustained by social security claimant, were specific and legitimate reasons for not accepting
12 physician's opinion.)

### Medical Advisor

14 Claimant argues that the Medical Advisor did not have all of the objective medical evidence to
15 review before he rendered his opinion.

16  Here, the ALJ retained Dr. Laviola as a medical advisor to provide testimony on claimant's
17 medical condition and to opine whether claimant's condition meets the Listings of Impairments.  Dr.
18 Laviola opined that claimant has congestive heart failure, which might met the Listing of Impairments
19 4.02 from March 2000 to October 2000.  (AR 323.)  After October 2000, Dr. Laviola opined that
20 claimant could perform a desk job/sedentary work, lift 20 to 50 pounds occasionally, walk 4 hours out
21 of eight with no limitation on sitting.  (AR 324.)

22 Claimant argues that Dr. Laviola did not review medical records provided after the case was
23 ordered remanded by the Appeals Council - some 88 pages.  The Commissioner argues that most of the
24 records cover a period prior to the date claimant protectively filed his application and therefore are not
25 relevant to the time period at issue.  (Opposition brief p. 10.)

26 Claimant cites *Barbato v. Commissioner of Social Sec. Admin.*, 923 F.Supp.1273, 1276 (C.D.Cal.
27 1996) for the proposition that the Commissioner's decision must stand or fall with the reasons set forth
28 in the ALJ's decision, as adopted by the Appeals Council.  Claimant states that since the ALJ did not

11

1  acknowledge that Dr. Laviola failed to consider all the medical evidence, the ALJ erred.

2  Claimant also cites *Williams v. Massanari*, 171 F. Supp. 2d 829 (N.D. Ill. 2001). In *Williams,* a medical expert was provided the Claimant's medical records for review and testimony. The medical expert, during the hearing, specifically qualified his testimony due to missing medical records and evidence from the Claimant's primary treating physician during the period of alleged disability. The missing records were ultimately obtained but never provided to the medical expert to supplement his opinion. The ALJ, instead, claimed he was able to assess the claimant's functional abilities without additional medical input. The ALJ was reversed. The ALJ should not have relied on opinion of medical expert which was based on incomplete record but should have forwarded additional records that he received to medical expert to reconsider opinion based on all of evidence rather than trying to assess evidence himself regarding claimant's functional abilities. 20 C.F.R. § 404.1526. The medical records at issue were undisputedly relevant to the disability period.

Here, the records at issue comprise two time periods - - (1) treatment records with Dr. Gutta and Dr. Highman dated after claimant's application, and (2) treatment records dated before claimant's application. In the first category, the ALJ reviewed the medical evidence subsequent to the remand:

> "In November 2002, Dr. Highman noted that the claimant had cardiomyopathy because of issues with cocaine and alcohol. Dr. Highman added that the claimant was doing 'pretty well' and did not really have 'a lot of' symptoms. In May 2003, the claimant denied chest pain, shortness of breath, cough, orthopena, and PHD. Maria Gonzalez, N.P., noted that the claimant had failed to follow through with laboratory tests in November 2002. Although he continued to smoke and drink, his heart function had improved. He admitted he was feeling well." (AR 21, citing 180, 181, 185.)

Claimant does not point to anything in these records which is inconsistent with claimant's improved condition as opined by Dr. Laviola. Indeed, these records indicate the medical providers consistent position that he appeared "normal," was doing "pretty well," and had zero chest pain. It is clear from these findings that the ALJ analyzed all of the records and medical opinions. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict). Unlike the records in *Williams v. Massanari*, claimant's medical records consistently report improvement. Thus, the new records need not be sent to the medical advisor.

The second category of the records at issue are treatment records from San Mateo County Hospital from 1995 through 1998. (AR 211-267.) The Court declines to find, as a matter of law, that the medical advisor's opinion lacks substantial evidence became he did not review records which pre-date the applicable disability time period. As the ALJ accurately noted, an individual is not eligible for Supplemental Security Income benefits for months prior to the month in which he filed for disability benefits. 20 CFR §416.335. Thus, the medical advisor was not required to consider pre-dated treatment records.

**State Agency Physician**

Claimant argues that the ALJ erred in essentially giving no weight to the opinion of the state agency medical physician.

Here, a State Agency physician reviewed claimant's medical records and opined on May 31, 2001, that claimant could lift ten pounds occasionally; could lift less than ten pounds frequently; could stand and/or walk at least two hours; could sit about six hours; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 109-117.) The ALJ accorded "less weight to the DDS physician's opinion in light of the claimant's significant improvement by October 2000." (AR 21.)

The conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician. *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir.1984). Therefore, the ALJ was not required to accept the opinion of the State agency physician. It is the role of the factfinder to determine which of several views is persuasive. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Thus, as controverted evidence, the ALJ was not required to explicitly discuss it. Accordingly, the ALJ did not err by failing to include the state agency physician's assessed limitations. 20 C.F.R. §416.927(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("To the extent that the nontreating physician's opinion rests on objective clinical tests, it must be viewed as substantial evidence.")

**Subjective Complaints**

Claimant argues that the ALJ failed to properly evaluate claimant's complaints of fatigue and

shortness of breath on his ability to work. Claimant argues that the ALJ failed to review all seven criteria as stated in SSR 96-7p. These factors are:

    1. The individual's daily activities;

    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1929(C)(3).

Claimant has not cited to any authority, aside from SSR 96-7p, for the proposition that the ALJ must consider *all* of the 96-7p factors. To the contrary, the Ninth Circuit has upheld ALJ's findings on less than an evaluation of all of the SSR 96-7p listed factors. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony. The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147, 1148 (9th Cir. 2001) (upholding adverse credibility finding where ALJ cited claimant's "lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations"); *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995) (upholding adverse credibility finding where ALJ identified treating physician's statement as to lack of objective evidence, pointing to the scope of activities identified in claimant's initial application, no medication side effects or prescription medicine.); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (upholding adverse credibility finding on claimant's inconsistent testimony with that of

1 treating physician's notes, minimal conservative treatment for alleged incapacitating pain).

2 Nonetheless, the ALJ considered multiple factors in assessing claimant's subjective complaints. The ALJ summarized claimant's testimony that he "suffers from headaches and shortness of breath on exertion. He suffers from fatigue." (AR 21.)

First, the ALJ considered the medical expert's opinion. The ALJ found, that based on the medical expert's testimony, claimant's congestive heart failure was severe enough to meet the Listings for a shorter duration. The ALJ concluded that following October 2000, as supported by the objective medical evidence, the claimant had dramatic improvement in his condition. While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ noted that contrary to the claimant's allegation of disability fatigue and shortness of breath, claimant's "treating physician noted that claimant was capable of playing 18 holes of golf after October 2000." (AR 22.) *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989) ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony ... [and] for resolving ambiguities.").

Claimant argues that the ALJ incorrectly concluded that he could play golf, and that he testified that he drove a golf cart and did not walk the course. This conflicting evidence is precisely the role of the ALJ and not for the Court to second guess or resolve conflicting evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (it is not the court's role to second-guess the ALJ's decision.)

The ALJ also noted that clamant failed to appear for the consultative examination arranged by the Commissioner. Claimant argues that he testified he traveled out of state to attend a funeral and notified the consultative examiner, which is a good reason for failure to appear. 20 CFR §416.918(b) provides that "Examples of good reasons for failure to appear [include] . . . . (4) Having had death or serious illness occur in your immediate family." *Id.*

20 C.F.R. § 416.918 unequivocally states that if a claimant does not have good reason for failing or refusing to take part in an ordered consultative examination the claimant may be found not disabled. Claimant testified he attended a funeral but did not establish that the funeral was a person in his

15

1   immediate family. It was his burden to do so. Nonetheless, the ALJ did not resolve the claim on this
2   basis alone, but instead decided the claim also on the basis of the remaining evidence.

3   The ALJ considered claimant's lack of treatment:

4   "[T]he claimant testified that he had not seen a physician in over a year.
    He added that he obtains his medications from his friends and from the
5   Honduras." (AR 22.)

6   The need for infrequent or conservative treatment may refute allegations of disabling pain or
7   impairment. *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

8   Claimant argues that he was too poor to obtain treatment. Claimant argues that he should not be
9   penalized for failing to seek treatment, citing *Reginnitter v. Commissioner*, 166 F.3d 1294, 1299 (9th Cir.
10  1999). In *Regennitter*, the Court held that the ALJ erred in rejecting claimant's mental condition for
11  failure to seek treatment: "[n]or is Regennitter's failure, because of his poverty, to seek 'treatment by
12  any mental professional' a valid reason for the ALJ to reject Dr. Manfield's opinion. Indeed, we have
13  particularly criticized the use of a lack of treatment to reject mental complaints both because mental
14  illness is notoriously underreported and because it is a questionable practice to chastise one with a
15  mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* at 1299-1300
16  (citations omitted).

17  Although the Ninth Circuit has held that "an unexplained, or inadequately explained, failure to
18  seek treatment ... can cast doubt on the sincerity of [a] claimant's pain testimony," *Fair v. Bowen*, 885
19  F.2d 597, 603 (9th Cir.1989), the Ninth Circuit has proscribed the rejection of a claimant's complaints
20  for lack of treatment when the record establishes that the claimant could not afford it. *Smolen v. Chater,*
21  80 F.3d 1273, 1284 (9th Cir.1996); *accord Gamble v. Chater,* 68 F.3d 319, 322 (9th Cir.1995) ("It flies
22  in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is
23  too poor to obtain medical treatment that may help him."); *Regennitter v. Commissioner of the Social*
24  *Security Administration,* 166 F.3d 1294, 1297 (9th Cir.1999) (claimant compensated for inability to
25  afford prescription pain medication by overdosing on large quantities of over-the-counter pain
26  medication).

27  The ALJ, however, did not reject claimant's subjective complaints on the sole basis that he did
28  not seek treatment. The ALJ noted the significant improvement in claimant's congestive heart failure

after October 2000, as supported by treatment records and tests. Plaintiff's testimony without the support of objective medical evidence is insufficient to establish disability. See 20 C.F.R. §§ 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"), 404.1528(a) ( "Your statements alone are not enough to establish that there is a physical or mental impairment"); *Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir.1995) ("An opinion of disability premised to a large extent upon a claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been 'properly discounted.' ").

Here, the ALJ considered multiple factors in discrediting claimant's subjective complaints. He considered claimant's medication, the functional restrictions, activities and treatment record. If there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. Accordingly, there is substantial evidence in the record to support the ALJ's credibility finding.

## CONCLUSION

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant William J. Bubick.

IT IS SO ORDERED.

**Dated:   November 14, 2006**          /s/ Lawrence J. O'Neill
b9ed48                                   UNITED STATES MAGISTRATE JUDGE